The testator bequeathed "unto the trustees of the institution for the maintenance and instruction of the indigent blind, in the city of New-York," the sum of $3000; and the sole question in this case is whether the appellants, a corporation under the name and title of "The New-York Institution for the Blind," can make title to the legacy. No other person and no other corporation claims to answer the description or be entitled to the legacy as such; and if the appellants cannot take it the gift is void, and the fund passes to the residuary legatees. There is nothing in the language of the bequest which makes it certain or very probable that the testator designed to state the corporate name of the institution for which his bounty was intended. The words may have been meant as a general description and not as the corporate name. It may very well be that he was unacquainted with the title, but at the same time knew the objects and general scope of the institution. It becomes necessary therefore to ascertain, before attempting to apply the description, what the nature and purposes of the corporation which claims the legacy are. The appellants were incorporated in 1831 by the name which they use in this suit; and the object of the institution is stated in the *Page 86 
act to be "for the purpose of instructing children who have been born blind, or who have become blind by disease or accident." The corporation is made capable of purchasing, holding or conveying any real and personal estate, to a limited amount, "for the purposes of this incorporation and no other." Its concerns are to be managed by a board of managers, and a president, vice-president, treasurer and two secretaries, to be chosen annually by the members of the society. No subscription to stock is provided for, and there is nothing to show how the means were to be obtained to carry out its objects. (Stat. 1831, 256.) In 1834, an act was passed authorizing the managers to receive four indigent blind persons from each senate district, in like manner and at the like expense to the state as provided by law for the indigent deaf and dumb, and they were to be instructed in some trade or employment carried on in the institution. (Stat. 1834, 581.) In 1836, the institution was authorized and required to receive four additional beneficiaries of the same character from each senate district, upon the same terms; but it was provided that these should be between eight and twenty-five years of age. Twelve thousand dollars were at the same time appropriated from the treasury, to be paid to the managers on condition that they should raise an additional $8000; and the whole was to be applied to the purchase of the premises occupied by the institution, to the erection of a workshop for the blind and for repairs of their buildings. The title of the real estate was to be vested in the managers, meaning probably in the corporation; and the institution was not to be removed from its then present site for fifty years. (Stat. 1836, 293, 593.) By an act passed in 1839, the legislature authorized the reception, by the institution, of eight similar beneficiaries, and again appropriated $15,000 towards the objects of the institution, on condition that the managers should raise $8000; and in 1845, they appropriated, without condition, $5000 a year for five years. (Stat. 1839, 171; Stat. 1845, 43.) *Page 87 
The corporation carries on its operations in the city of New-York; and it is proved that there is no other institution or association in that city having any reference to the amelioration of the condition of the blind. The laws respecting the deaf and dumb, referred to in these enactments providing for beneficiaries to be received from the senate districts, contemplate the support of the indigent deaf and dumb persons at the institution provided for them during the course of their tuition. As the blind persons were to be received in like manner and at the like expense, they were of course to be supported by the institution, and the state was to pay a compensation therefor. (3 R.S., 227, 3d ed.;Stat. of 1822, 229, 230, §§ 1, 5, 6; Stat. of 1825, 230, § 3;Stat. of 1830, 185, § 2.)
With this knowledge of the character of the institution, we are now ready to compare it with the description which the testator has given of his intended legatee. First. He designed the legacy to go to an institution for ameliorating, in some way, the condition of the blind. Second. He supposed such an institution to be in existence in the city of New-York. Third. He supposed its business to be the maintenance as well as the instruction of blind persons. Fourth. He thought that indigent blind persons were wholly or in part the objects of the care of the institution. Fifth. He does not appear to have thought that the benefits intended were limited to children; or, if he did, he did not think that circumstance so prominent as necessarily to be a part of the description of the institution.
In all these features, I think the corporation which claims this legacy completely answers the description which the testator has given. Though the act of incorporation did not refer toindigence as a qualification for the unfortunates who were to be relieved, or provide for the maintenance of those who were to receive the benefits to be provided; and though it did contemplate children only as the objects of the attention of the institution, the subsequent legislation so far *Page 88 
modified the character of the corporation, in these particulars, that when the will was made these several circumstances had all been engrafted upon it, and might well enter into a description of its general scope and purposes. It is of no importance if the qualification of indigence, and the provision for maintenance, and for the admission of grown persons, were all limited to the state beneficiaries. The question arises upon the description. It is a question of identity; and the point is whether the legatee can be found and certainly identified by the description contained in the will. The description is not shown to be erroneous, though there be a different class of persons also to be relieved, or if some are to be instructed merely and not supported. I do not, upon the whole, see how a description comprised in a brief sentence could more accurately have hit the leading particulars which go to define this corporation and to distinguish it from all others.
It is well settled that a devise or bequest to a corporation need not state its corporate name. It is sufficient that the devisee or legatee, whether a natural person or a corporation, is so defined as to be distinguished from every other person. (1Jarman on Wills, 330; Angel Ames on Corp., 60; Counden v.Clerke, Hob., 29, a; Dr. Ayray's case, 11 Coke, 20, b.) In the last mentioned case, the court resolved that, although it had been said that the name of an incorporation is like the name of baptism, "yet, if the person be so described that he may becertainly known from other persons, the omission, or in some cases the misprision of the name of baptism, shall not avoid the grant." Indeed, the numerous cases upon this subject relate to devises and grants where some mistake has been made in attempting to give the name of the corporation, or some circumstance false or inapplicable has been introduced into the description. Here the true corporate name was not given, and it is not shown that the testator intended to give the name; but, as before remarked, he described this institution with entire accuracy. I do not think it *Page 89 
necessary therefore to go over the cases cited at the bar to show how considerable an error may be overlooked or reconciled. There is much solemn trifling in the old books upon this question. (Case of the Corporation of Lynn, 10 Co., 123, a; Bac. Ab.,Capacity C, 2.) It would be a useless labor to review them if I am right in supposing that this testator has not committed any error in describing the intended administrator of his bounty. The will does not state the purpose for which the legacy is given; but when it is ascertained by provisions in public laws that there is but one object to which the legatee can lawfully apply it, it is not a violent presumption that the testator contemplated and intended that it should be applied to that object.
I am of opinion that the judgment of the supreme court should be reversed, and the proceedings be remitted to that court with directions to modify the sentence of the surrogate in such manner that the respondents, who are executors of William How, be required to pay to the appellant, the New-York Institution for the Blind, the legacy mentioned in the will of said How, with interest thereon commencing one year after the testator's death.