NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—APRIL, 1877.

## CURRAN *v.* SEARS.

### *In the matter of the probate of the last Will and Testament of* EDWARD J. SEARS, *deceased.*

Under the provisions of the act of 1870, (Laws of 1870, Chap. 359), the Surrogate of New York County has full power, authority and jurisdiction, upon proceedings for the probate of a will, to pass upon the validity, construction or legal effect of any of the dispositions of the will when called in question by any of the heirs, next of kin, legatees or devisees, as amply and conclusively as the Supreme Court may do.

But the Surrogate should refuse jurisdiction in such a case unless all the parties interested in the controversy are brought before him.

A devise to the trustees of an incorporated college, and their successors forever in trust, &c. *Held:* To vest the estate devised in the college as a corporation.

A devise to an incorporated college for its legitimate purposes, subject to the payment of an annuity by the devisee to the testator's widow for life. *Held:* Valid. In this respect, there is no distinction between a devise of realty and a bequest of personalty.

The act of 1860, (Laws of 1860, Chap. 360) prohibiting bequests, &c., to charitable, literary, &c., instiutions of more then one-half of testator's estate—construed and applied. And *Held:* That the Surrogate will not undertake, by reference or otherwise, to ascertain the amount of the devise, until the party interested in the disputed devise is brought in ; and in the meantime probate will be suspended.

THIS was a proceeding for the probate of the last will and testament of Edward J. Sears, deceased.

Objections were interposed by Sarah Curran and Maria Sears, sisters, and Mark Sears, a brother of the testator.

There was no question as to the due execution of the will, and the contestant waived all objections to the probate of the will as a will of personal property. It was contended that the will could not be admitted as a will of real property, on the ground of the invalidity of

the seventh clause of the will disposing of the testator's real estate.

The grounds of the objection were:

*First*, that the devise to the trustees of Manhattan College and their successors was to them and not to the college.

*Second*, that if the devise were held to be adverse to the college, it was void, because the college had no capacity to take and hold the property in trust.

The seventh clause of the will was as follows:

"*Seventh*, I give and devise all my real estate, consisting of two brown stone houses, and the lots on which they are erected, viz: House and lot No. 244 E. 49th street, between 2d and 3d Avenues, and the house and lot 106 East 61st street, between Lexington and 4th Avenues, in the city of New York, to the trustees of Manhattan College in the city of New York, and their successors for ever, in trust to receive the rents, issues, and profits thereof, to apply the same to the use of said Manhattan College for the following purpose, to wit: To found and maintain a Latin professorship in said college to be called the Sears professorship."

The foregoing devise is made to said trustees on the *express condition*, that out of the rents, issues and profits of said real estate, the said trustees, and their successors shall pay to my wife, Catherine Irwin Sears, an annuity of $1,500 per annum for and during the term of her natural life, the same to be paid to her in monthly or quarterly payments as the said Catherine Irwin Sears may elect.

"After the death of my said wife, but not before, I authorize and empower the said trustees, and their successors, in their discretion, to sell any, or all, *the real estate hereby devised in trust*, viz.: the two houses and the lots above mentioned, and invest the proceeds thereof,

and from time to time to change the said investments as they may be advised, and to receive the rents, profits, issues, interest, and income thereof, arising from such investment, and to apply the same, in the same manner, and upon the same trusts as those on which said real estate is devised."

JOHN PYNE, *for opponent.*
DEVELIN, MILLER & TRULL, *for Manhattan College.*
D. M. SHAW & EDWARD PATTERSON, *for contestants.*

THE SURROGATE.—The first question to be considered in this matter is, whether this court has the power to determine this question.

Prior to the statute of 1870, chapter 359, (applicable to the Surrogate of this county only), the Surrogate had no authority to construe wills, except so far as it became necessary on the final accounting, and the proponent's counsel objects to the jurisdiction of the Surrogate to pass upon the questions sought to be raised by the counsel for the contestants.

This enquiry must be answered by the language of the act, and the reasonable inferences to be drawn therefrom, as this court is one of peculiar and special jurisdiction, and can only exercise the jurisdiction and powers by which, a favorable construction of the statute are found to have been conferred upon it.

*Redfield on Surrogates*, page 22, says : " The principle is now fully established by authority and practice, that although where the statute directs the Surrogate to proceed in any certain way, he must proceed in that way and no other ; yet, if justice demands that in regard to some subject that is within his jurisdiction he should exercise an incidental power which has not been expressly given to him by the statute, he should not for that

reason, decline to exercise it." In the *matter of Brick* (15 *Abb. Pr.*, 12), Judge Daly, sitting as Surrogate, held, that in all matters submitted to their cognizance, Surrogates are authorized to proceed according to the course of courts, having by the common law, jurisdiction of such matters, except so far as they are restricted by statute, and they have such incidental powers, as are necessary to carry those which are given them into effect, and the eleventh section of the act of 1870, above referred to, provides that in any proceding before the Surrogate of the County of New York, to prove the last will and testament of any deceased person, as a will of real or personal estate, or both, in case the validity of any disposition contained in such will is contested, or their construction or legal effect called in question by any of the heirs or next of kin of the deceased, or any legatee, or devisee, named in the will, the Surrogate shall have the same power, and jurisdiction, as is now vested in and exercised by the Supreme Court, to pass upon, and determine the true construction, validity, and legal effect thereof; and the same section provides for the entry of his decision in his minutes, and for the review by appeal by any of the heirs, next of kin, legatees, or devisees, in the same manner, and with the same effect as appeals may be taken from his decision admitting or refusing probate. The effect of this statute has been the subject of considerable discussion on the part of the profession, but it seems never to have been judicially determined.

The principal objections which have been urged against the general authority of the Surrogate of this county, to entertain proceedings for the construction of wills, are *first*, that that jurisdiction has hitherto been exclusively vested in she courts exercising equitable authority, and *second*, that there is no provision in the

act in question or otherwise, for the citing of legatees or devisees, for the purpose of such construction.

When these questions were first raised, I was inclined to the opinion that in consequence of these defects or omissions of the statute, it would be unwise for this court to entertain jurisdiction for the purpose of a construction of a will except so far as such determination became necessary in passing upon the probate of the will; but upon a more careful examination of the terms of the section, it is quite clear to my mind that the Legislature intended by it to confer upon the Surrogate of this county full power, authority, and jurisdiction, upon probate, to pass upon the validity of any of the dispositions of said will which should be contested, and upon their construction or legal effect, when called in question by any of the heirs, next of kin, legatees, or devisees as amply, and conclusively as the Supreme Court may do, and I am of the opinion that it is my duty to accept that jurisdiction and responsibility, whenever presented. And when the act in question confers that jurisdiction and defines its effect upon the parties interested, I entertain no doubt of my authority as an incident to the performance of that duty to bring in all the parties interested for that purpose; but I am equally clear in the opinion that where a case has been submitted to me, without such parties being called in, I ought to refuse to exercise the jurisdiction except so far as it may become necessary for the purpose of passing upon the probate of the instrument in question, as a will of real and personal property, until such parties are brought in.

It is conceded by the counsel for both parties, that Manhattan College in question was incorporated by the regents of the University under the authority conferred upon them, Chapter 184 of the Laws 1853, andr efer-

ence to that chapter shows that such organization is under the authority of trustees who have the management of the college, and the act provides for such college holding and possessing real and personal property to an amount specified.

The next question to be determined is whether the will in question by the seventh subdivision devised the real estate to the trustees as *individuals*, rather as constituting the corporation of Manhattan College, and it is claimed by the learned counsel for the contestant, that the devise in question was to the trustees, as contra-distinguished from the college, the college being a beneficiary together with the widow, for which he cites *Englis* v. *Trustees of Sailor's Snug Harbor of N. Y.* (3 *Pet.*, 99), where it said that a testator in appointing trustees may designate them by official titles instead of by name, in which case they take as if they had been designated by proper names; but in that case the devise was to the Chancellor of the State of New York, Mayor and Recorder of the city of New York, President of the Chamber of Commerce in the city of New York, President and Vice President of the Marine Society of the city of New York, Senior Minister of the Episcopal Church of said city, and Senior Minister of the Presbyterian Church of said city ; in trust to erect and build an Asylum or Marine Hospital, to be called the Sailor's Snug Harbor, for the purpose of maintaining and supporting the aged, and decrepit, and wherein our sailors, &c.    There is a very wide distinction between that and the devise in question, for in that case there was no such corporation as Sailor's Snug Harbor, and the trustees named occupied no relation to any such corporation or enterprise, while in this case the trustees named are executive, and corporate officers of the college.

In the *New York Institution for the Blind* v. *How*, (10 *N. Y.*, 84), it was held that a bequest " to trustees " of an institution, was a bequest to the institution, although those having charge of it were in the charter called managers. They are still defined and treated as trustees, and known in law as such. See 1 *Rev. Stat.* 600, section 9 and 10, and 2 *Id.*, 462, section 33.

In the *Reformed Dutch Church* v. *Brandon* (52 *Barb.* 228), the devise was to the consistory of the Reformed Dutch Church of Prattsville, that is to the Ministers, Elders and Deacons, and their successors in office, to be held, used, or invested for the benefit and use of the said church in such manner, as they may deem best for the interest of the church, &c. It was held that the testator clearly intended that the Reformed Dutch Church mentioned, should have the benefit of the bequest made by him to the consistory provided the consistory could control the bequest, and at page 233 Mr. Justice MILLER says: The bequest to the consistory was in effect a bequest to the Church Corporation itself, and was not the less so because it was devised to those officers.

In *Bailey* v. *Onondaga Mutual Ins. Co.* (6 *Hill*, 476), a bond, executed by an agent, for the faithful performance of his duty, was to the directors of the company to be paid to them; their successors and assigns, and was held to be in legal effect made to the company, and that the company might maintain an action upon it in their corporate name, and that the board of directors being the only legal agents of the corporation, were to be regarded as its representatives in all their official acts and doings.

To the same effect, see *New York African Society* v. *Varick* (13 *Johns.*, 38).

In the *Attorney-General* v. *Tancred* (*Ambler*, 351) a

conveyance was made to the use of the Masters of Christ's and Caius Colleges, the Presbyterian College, the College of Physicians, the Treasurer of Lincoln's Inn, the Master of the Charter House, the Governor of Chelsea and Greenwich Hospitals for seamen in trust, it was held that the conveyance was for the benefit of the bodies corporate of the said colleges, and not for the fellows in their natural capacity. (See also the case of *Christ's College, Cambridge*, 1 *Wm. Blacks.*, 90.)

In *Manice* v. *Manice* (43 *N. Y.*, 303), the testator among other things directed his trustees to pay $5,000 unto the treasurer for the time being of Yale College in New Haven, and requested the Trustees of the College to invest in New York securities, or on bond and mortgage, and accumulate the interest, &c. It was held at page 387, that the direction to pay the treasurer was a good gift to the college, the college having been shown to be capable of taking it.

From these authorities, and such consideration as I have been able to give the terms of the will, I am of the opinion that the testator use the term, Trustees of the Manhattan College and the Manhattan College, as synonymous, and both as designating the corporation ; and I am unable to perceive any good reason for his selecting the trustees instead of the college to be his trustees for the benefit of the college as *cestui-que-trustens*, particularly as there is no evidence to show that he had any particular acquaintance with, or confidence in them and it seems to me that if he had intended to vest the title of the estate devised in the trustees instead of the college, or corporation, he would have had some of his confidential friends appointed as executors and trustees for the purpose; and I am therefore of the opinion that the estate devised by the seventh clause of the will was intended to, and did vest in the Manhattan College as a corporation

This conclusion renders it unnecessary for me to consider the question so exhaustively and ably presented by the learned counsel for the contestants, that the devise is void, as in contravention of the *Revised Statutes* 723, section 15, upon the subject of the unlawful suspension of the absolute power of alienation, although I have examined the authorities upon the subject in detail in that especial interest; nor is it necessary for me to enter into the much debated and vexed question, whether charitable uses are abolished by our statutes. That question seems to have been set at rest by the case of *Homes* v. *Mead* (52 *N. Y.*, 332), and it is conceded by the respective counsel that our statute upon uses and trusts (*Revised Statutes* 729, *sections* 55, 56, 60), authorize such a devise to the college in question for the purpose named in the will.

The next question to be considered is whether the trust in behalf of the widow, renders the devise void because of the incapacity of the college to take the same encumbered by that trust. The counsel for the contestant claims that the devise is void because the college has no power under chapter 318, of the laws of 1840, as en-larged by chapter 261, of the laws of 1841, to receive real estate in trust for another, and cites 2 *Revised Statutes* 57, section 3; but that section as it seems to me does not sustain this construction. Its provision is, that no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter, or by statute, to take by devise. That section does not attempt to limit the purpose for which a devise may be received.

In the *Matter of Howe*, (1 *Paige*, 214), a legacy was given to St. George's Church, in trust to pay the income to the testator's house-keeper, for life; after her death the income thereof to be applied to the purchase

of a church library, and support of the Sabbath school in the church and other church purposes to which church contributions might be applied according to the tenets of the Episcopal Church, and the chancellor stated the general rule to be that corporations cannot exercise any powers, not given to them by their charter, or acts of incorporation, and for that reason, they cannot act as trustees in relation to any matter in which the corporration has no interest; but wherever property is devised, or granted to a corporation partly for its own use, and partly for the use of others, the power of the corporation to take and hold the property for its own use, carries with it, as a necessary incident, power to execute that part of the trust which relates to others.

The legacy was directed to be paid over to the Rector, Church Wardens and Vestrymen as representatives of the Corporators, who were bound to carry into effect the testator's will in respect to the same.

In the case under consideration, it is equally true that the substantial part of the legacy is for the benefit of the corporation, and it seems to me that it would be a very illogical, as well as inequitable construction that because a subordinate trust was created in favor of the widow that the intention of the testator to give the college the principal benefit of the devise should be defeated.

In *Philips' Academy* v. *King*, (12 *Mass.* 546,) it was held that a corporation is capable of taking and holding property as trustee.

In *Vidal* v. *Girard's Executors*, (2 *How.* U. S., 527), the corporation of the city of Philadelphia had power, by its charter, to take real and personal estate by deed and devise, and it was held that having this power, it might also take and hold property in trust in the same manner

and to the same extent that a private person might do Justice STORY, in delivering the opinion says, "Now although it was in early times held, that a corporation could not take and hold real and personal estate in trust, upon the ground that there was a defect of one of the requisites to create a good trustee, *viz.*: want of confidence in the person; yet that doctrine has been long since exploded, as unsound, and too artificial, and it is now held that where a corporation has a legal capacity to take real and personal estate, there it may take, and hold it upon trust, in the same manner, and to the same extent, as a private person may do.

It is true, that if the trust be repugnant to or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be capable of executing it, but that will be no ground to declare the trust itself void, if otherwise unexceptionable, but it will simply require a new trustee to be substituted by the proper court possessing equity jurisdiction, to enforce, and perfect the subject of the trust."

In *Tinkham* v. *Erie Railway Co.* (53 *Barb.*, 393), where the question was determined as to the right of the defendants, a corporation, to take real estate, subject to the condition, that a portion of the land should be kept open as public streets, it was adjudged that such condition was valid, and that the corporation could hold the estate; and Justice BALCOM, in delivering the opinion of the court, recognizes the full authority of the case of *Howe's Executors* (above cited), as applicable to real estate as well as personal.

It is urged by counsel for the contestant, that the authorities above cited, are not applicable to a case where there is a devise in trust, while he recognizes the soundness of the rule as laid down in respect to person-

al property, but I am unable to appreciate any substantial distinction between a bequest and a devise, in respect to the question of the authority of the corporation to take and execute the trust. The statute (1 *Revised Statutes*, 739, sections 56, 60) authorizes incorporated colleges to receive, and hold in trust, real and personal property, to found and maintain professorships, and scholarships, (among other things), which seems to put real and personal property upon the same footing; and I think the devise in this case is in strict conformity to that authority, and the fact that the devise is encumbered by a subordinate trust, ought not to deprive the college of the benefit of devise, or defeat the obvious intention of the testator.

If the principle be admitted—which seems to be inevitable, from these authorities—that a corporation may receive property in trust, and that its functions are dependent upon its charter, and the statutes relating to it, it must be admitted that there is no statute expressly authorizing a corporation to receive and execute a trust outside of the legitimate purposes of its organization, nor is there anything in the statute of Uses and Trusts, which forbids the taking by a corporation, of real estate, by devise, in trust for a third party, execpt such as are implied by the statute of 1840, above cited. And it seems to me, that if the case of *Howe's Executors* above cited, is good law in respect to the taking and holding personalty in trust, partly for the benefit of the corporation, and partly for the benefit of a third person, the principle is equally applicable, and reasonable, when a devise of real estate is received, subject to a subordinate trust to the widow, as in tnis case. And it is imposssible to conceive that the learned Chancellor in that case, and Mr. Justice BALCOM, in *Tinkham* v. *Erie Railway*, and Justice STORY, in *Vidal*

v. *Girard's Executors*, should have used language applicable alike to a devise of real estate and a bequest of personal property, when they intended only to embrace a bequest.

Upon the best consideration that I have been able to give the subject, I cannot appreciate any such distinction as is sought to be made in this case, and I do not perceive any good reason for denying the college in question the benefit of the devise, because coupled with a subordinate trust to the widow, as a condition subsequent.

I am therefore of the opinion that the devise to the Trustees of Manhattan College, in trust for its legitimate purposes, though subject to the trust in behalf of the widow, is valid, and vested the title in the corporation, and that it has full power, and ample authority to execute the trust in behalf of the widow, as well as for its own benefit.

The next and final question to be considered in this matter is, the effect of Chapter 360, of the laws of 1860, which provides that no person having a husband, wife, child, or parent, shall by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious, or missionary society, association, or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more ; and chapter 319, of the Laws of 1848, which provides that no person leaving a wife, child, or parent, shall devise or bequeath to a benevolent, charitable, scientific, or missionary society or corporation, more than one-fourth of his estate, after payment of his or her debts, and such devise and bequest shall be valid to the extent of one-fourth, and no such devise, or bequest shall be valid in

any will, which shall not have been made and executed at least two months before the death of the testator; and the earlier portion of the same section limits such a devise, or bequest, to a sum the clear annual income of which shall not exceed $10,000, but the contestant's counsel, in his argument, does not raise any question under the latter section, whether because as to the prohibition respecting the annual income of the devise, he regards the remedy as vesting exclusively in the attorney general, against the corporation, or whether as to the question of the excess over one-fourth, and the time of executing the testament, he considers the provisions of the act of 1848, repealed, by chapter 360, of the *Laws of* 1860, above cited, does not appear.

I think there is no reason to doubt that the act of 1848, as amended by ch. 649, Laws of 1872, which is confined to benevolent, charitable, literary, and scientific, missionary, mission, or other Sunday school purposes, for mutual improvement in religious knowledge, for the furtherance of religious opinion, does not apply to an institution like Manhattan College.

In *Bascom* v. *Albertson* (34 *N. Y.*, 616), Justice PORTER, in referring to the act of 1860, says: "The purpose of the law is not only expressed in its title, but is apparent on its face. It was designed to regulate, and restrict the power of the testator. It was neither conceived nor formed in a spirit of hostility to charitable societies; on the contrary, it enlarged the proportion of a testator's estate, which he might dedicate to charitable uses, in exclusion of the claims of his own immediate family," and in *Chamberlain* v. *Chamberlain* (43 *N. Y.*, 424), Justice ALLEN treats the act as applicable to an educational institution incorporated by the Regents of the university, and as a subsisting prohibitory act upon the subject.

The act of 1860 was doubtless made for the purpose

of protecting the rights of husband, wife, child, or parent. If that academy is covered by the act of 1860, there seems to be no doubt that it covers the college in question, and the term literary and scientific association or corporation, would seem fully to define the character of the Manhattan College, and I have no doubt of its application to the college in question.

The point is not raised in this case that there is no one but the widow interested in this question, and that she desires the enforcement of the devise, according to the terms of the will; but in *Harris* v. *American Bible Society* ( 4 Abbott Pr., N. S., 421), Justice FULLERTON, in discussing this question, says: " This General Term held, I think properly, that the prohibition is peremptory, and may be insisted on by any person who would derive benefit therefrom. The language is absolute, and if courts have power in any case to judge concerning the probable motives of the Legislature, and may imply accordingly an exception to the positive terms of the statute ( on which no opinion need now be expressed) I am unable to discover any such ground for such a proceeding in this instance," and in that case it was held that the prohibition is peremptory, and that the half is to be computed with reference to the estate at the time of the testator's death, and in *Chamberlain* v. *Chamberlain*, above cited, it is decided that in ascertaining the estate, only one-half of which can be devised to charitable or educational corporations, under the act of 1860, the widow's dower and the debts are to be first deducted, and this latter case, seems to leave no doubt as to the right of the contestants in this matter to raise the question growing out of the prohibition of the act of 1860. But as the Manhattan College, (the legatee under the disputed devise,) is not a party to these proceedings, I am of the opinion that I ought not

to order a reference to determine the amount of the estate, to apply the act of 1860, or take any further proceeding in respect to it until said college shall be brought in. And when brought in, if counsel for the contestant shall so elect, a reference may be made to take testimony, and report upon the question of the amount of the devise to said college, over and above the widow's dower, and the debts of the estate, and until the coming in of the referee's report, and the determination of the question under section 11, of chapter 359, of the Laws of 1870, the probate should be suspended.

Order accordingly.