IN THE MATTER OF THE ESTATE OF AMELIA G. ULLMAN, DECEASED.*

*Surrogate — no power to assess the collateral inheritance tax or to declare void a will admitted to probate.*

The will of Amelia G. Ullman, relating to both real and personal estate, having been duly admitted to probate, proceedings were subsequently taken to determine and assess the collateral inheritance tax, in which proceedings an appraiser, appointed by the surrogate of the county of New York, decided that the will unduly suspended the power of alienation, and reported that, with certain exceptions, the estate passed to the heirs-at-law and next of kin of the testatrix, as in cases of intestacy, and that such interests were subject to tax.

This report having been confirmed, certain of the heirs-at-law and next of kin of the decedent appealed from the order assessing their shares.

*Held*, that there was no express power given the surrogate to declare void, upon his own motion, a will which had been admitted to probate, and that no power of such a nature could be implied.

That it was impossible, even if the power existed, that such an adjudication could be final so as to invalidate a will relating to real estate.

That, in a proceeding so taken, the surrogate had no power even to declare legacies to be free from tax.

---

* NOTE.— The decision in this case was reversed in the Court of Appeals by a decision of that court handed down on the 7th day of March, 1893.

That the first probate of a will of real estate did not become final until after a year in the case of personal estate, while in the case of real property the probate might, in a different form, be attacked after a much longer period.

That an attack upon a will already admitted to probate should proceed from a party interested in property of the decedent affected by the will.

APPEAL by William B. Hooper, Joseph Hooper and Samuel Hooper from an order of the surrogate of the county of New York, entered in his office on the 15th day of March, 1892, adjudging that their interests in the estate of Amelia G. Ullman were severally liable to a collateral inheritance tax of $165.66.

The proceeding was taken by John P. Haines, an executor of the estate of Amelia G. Ullman, upon a petition praying for the appointment of an appraiser to determine the collateral inheritance tax due upon her estate after her will, relating to both real and personal estate, had been admitted to probate. The estate consisted, to a very considerable extent, of real estate. The appraiser, appointed by the surrogate, decided that the power of alienation was unlawfully suspended by the will, except as to a life estate in all her property given to the husband of the testatrix, and as to certain annuities to Eugenie Wiswall, and he reported that, with these exceptions, the estate passed as if Amelia G. Ullman had died intestate. The report was confirmed by the surrogate, and on an appeal to him, taken by the present appellants, the surrogate again confirmed the report.

*De Lagnel Berier*, for the appellants.

*Horace Russell*, for the executors, respondents.

VAN BRUNT, P. J.:

The sole question involved upon this appeal is, whether, in proceedings to fix the collateral inheritance tax, the surrogate has power upon his own motion to declare void the provisions of a will.

It is urged upon the part of the respondents that such power exists as an incident to his general jurisdiction over the subject of fixing such tax; that the act gives the surrogate, in express terms, jurisdiction to hear and determine all questions in relation to the tax; that he acts judicially, and, therefore, has, in addition to the power expressly given, all incidental powers which may be necessary to enable him to fix the tax, and, therefore, that the power conferred

does include the right to construe a will even of real estate, it being utterly impossible to fix the tax on the estate without so doing.

If this contention is true, it is the most remarkable instance of the conferring of power by implication that our statute book affords. The basis of the argument seems to rest upon the fact of the inconvenience which would arise in the fixing of this tax did not that power exist in the surrogate. We do not think that merely because of inconvenience in the administration of an unwieldy, incongruous, ill-considered and blindly drawn statute, such implications should be indulged in. It certainly cannot be claimed that in this proceeding before the surrogate his adjudication upon the validity of the provisions of a will affecting real estate shall be final and conclusive. If it is not, however, cases would continually arise in which, after the surrogate had assessed the tax, holding the will to be valid or invalid, as the case might be, upon a bill filed, a contrary result might be arrived at, and the real beneficiaries mulcted in a tax without the slightest authority in law.

It certainly cannot be that the determination of the surrogate that the provisions of a will are valid, in these informal proceedings for the purpose of assessing this tax, makes the question as to the validity of the provisions of that will *res adjudicata*, for the reason that in proceedings initiated in the manner in which this proceeding was initiated the surrogate has no power to determine that legacies are free from taxation. (*In re Wolfe*,* 66 Hun, 389.)

And, besides, if this power resides in the surrogate of his own motion to declare a provision in a will invalid for the purpose of fixing the tax under these acts, then we cannot see why he may not institute an investigation for the purpose of proving that the execution of the will was obtained by undue influence or fraud, or that the testator had not testamentary capacity, and that, therefore, there was in reality no will — powers which are equally necessary for the purpose of levying the tax as the power to construe and destroy.

There is another reason why an adjudication by the surrogate upon this subject cannot be final, and that is, because, at any time within one year after probate of a will of personal property, any person interested in the estate of the decedent may institute pro-

* NOTE.— The decision in this case was reversed in the Court of Appeals by a decision of that court handed down on the 13th of February, 1893.

ceedings for the revocation of such probate; and in respect to real property this right, in a different form, exists for a much longer period of time. Hence, after the surrogate has assessed the tax and the executors have paid it, subsequent proceedings may develop the fact that such tax, as assessed, was entirely unauthorized.

The ordinary rule governing the interpretation and effect of wills is that their provisions shall be carried out by the persons intrusted therewith until they are attacked by some person who is interested in the property of the decedent, which is affected thereby. A departure from this rule, and the giving to the surrogate in these proceedings power to construe wills and determine upon their validity or invalidity, would necessarily lead to inevitable confusion and uncertainty, and the results would be far more detrimental than those which can possibly arise from the refusal to confer such authority by judicial legislation. If the law in question is defective in this particular, as it manifestly is in very many others, it is for the legislature, not the court, to supply the omission.

It has been claimed that the cases *In re Verplanck* (91 N. Y., 439), and *Purdy* v. *Hayt* (92 id., 446), are authority for the contention of the respondents upon this appeal. But it is apparent, upon an examination of those cases, that they have no relevancy to the question at bar. All that the court decided in those cases was that upon the accounting of executors the surrogate might determine whether the personal property, or that which had become personal property, had been properly distributed, or to whom it should be paid. It is true that the construction of the will might be involved in this determination; but all that that construction decided was the propriety of disbursements made in the administration of the estate or to whom the fund in hand should be distributed, which is in harmony with the power expressly conferred by section 2624 of the Code upon the surrogate to construe the disposition of personal property in a will. But in the case at bar the authority of the surrogate to construe the disposition in a will of real estate is claimed, not by direct legislation, but simply by implication — an authority which has never yet been conferred upon any such officer by any legislation.

The order should be reversed, with costs.

O'BRIEN and BARRETT, JJ., concurred.

Order reversed, with costs.