(89 Misc. Rep. 47)

In re BOUCHOUX.

In re LAUER'S WILL.

(Surrogate's Court, Kings County. January, 1915.)

1. WILLS ⟨©⟩698—ACTION FOR CONSTRUCTION—PROCEDURE.
   A Surrogate's Court, in construing a will pursuant to the power conferred on it by Code Civ. Proc. § 2615, is subject to all the limitations and restrictions which have been traditionally annexed to the exercise of such power in courts of equity.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1676; Dec. Dig. ⟨©⟩698.]

2. WILLS ⟨©⟩695—ACTION FOR CONSTRUCTION—RIGHT OF ACTION.
   Where testator died seised of certain lands, leaving his widow, children of his own, and children of a deceased child surviving, and thereafter such lands were conveyed to F. by the wife and adult heirs of testator and the duly authorized guardian of minor heirs, and where F. died intestate, leaving B. and three others his only heirs at law, all of whom contracted to sell the premises, whereupon the vendee questioned their title, a special proceeding, wherein these facts were relied on, which was brought in the Surrogate's Court, under Code Civ. Proc. § 2615, for construction·of the will, by one who was neither an heir at law nor a devisee of testator, was unauthorized, notwithstanding section 1866, authorizing proceedings for construction of wills; section 1866 merely bestowing the right of action on an heir or devisee.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1665–1669; Dec. Dig. ⟨©⟩695.]

3. WILLS ⟨©⟩700—PROCEEDING FOR CONSTRUCTION—PARTIES—VENDEE.
   The vendee, being the only person who would be adversely affected by the finding asked for in such proceeding, was a necessary party thereto.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1678; Dec. Dig. ⟨©⟩700.]

In the matter of the application of Emma V. Bouchoux for the construction of the last will and testament of Carl Lauer, deceased. Proceeding dismissed.

William W. Wingate, of Brooklyn, for petitioner.

KETCHAM, S. This is a special proceeding brought under section 2615 of the Code, in which construction of a will is sought.

[1] That section bestows upon the Surrogate's Court a power, not previously enjoyed, to construe a will in a proceeding brought for the purpose. The exercise of this power is hedged about by the limitations contained in the section: That the proceeding can only be had with respect to a will probated in the court to which the application is made; that a citation shall issue if the surrogate entertains the proceeding; and that, on the return of the citation, the surrogate shall make such decree as justice requires. The whole section must be read with the accompanying enactment contained in section 2510 of the Code, by which there is given to the surrogate jurisdiction—

⟨©⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"to administer justice in all matters relating to the affairs of decedents, * * * to try and determine all questions, legal or equitable, arising * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires, * * * and to determine the validity, construction or effect of any disposition of property contained in any will proved in his court, whenever a special proceeding is brought for that purpose."

Of course, the grant of jurisdiction to construe wills does not involve either a mandate or a permission that the court newly invested with such jurisdiction shall, without discrimination, expound the meaning of every will which shall be offered for the process. The Code, in section 2510, has invested the Surrogate's Court with jurisdiction to determine all equitable questions which shall arise in any proceeding before him, and therein to make an equitable disposition of the matter "by such decree as justice requires," and, further, by the section last cited and by section 2615, not only vests in the court the right to determine the validity, construction, or effect of testamentary dispositions, but imposes upon him a duty as to the entertainment of the application and the further duty to make only such "decree as justice requires."

Thus, not only is the court endowed with all the equitable faculties available for the solution of any question which may be lawfully presented to it, but in the exercise of such faculties it is inevitably subject to all the limitations and restrictions which have been traditionally annexed to the use of such faculties in other courts. It will be obvious to the most thoughtless mind, if the subject be approached with sincerity, that when the surrogate is invested with jurisdiction to entertain a proceeding for the construction of a will, all that he takes is the same duty which in a like case would rest upon the Supreme Court. The analogies between the treatment of the subject in courts of equity and in the Surrogate's Court are well enforced by the provision that the surrogate may or may not entertain the application, and by the direction that the decree shall be such as justice requires; for it would be clearly contrary to justice if the surrogate should make any disposition which would be forbidden if the same facts under the same conditions were presented to a court of equity. Hence every definition or limitation which would restrain any court either at the threshold of an action for construction or in its later course must bind the surrogate.

In many instances in which Surrogate's Courts have been granted a power to entertain proceedings for the purpose of accomplishing results which were previously obtained only in other courts, the statutes enacted to that end have been wisely content with a mere grant of the necessary jurisdiction, and it is a fixed theory that a grant of jurisdiction over a prescribed subject-matter to a court in which the matter was not previously cognizable is inevitably accompanied and characterized by all the requirements to which the subject-matter and proceedings affecting it have been made obedient in the past.

This principle has been illustrated in the course of legislation with respect to this court. It is by statute that for a lifetime the surrogate has exercised powers not previously vested in him, as well as "such incidental powers as are necessary to carry into effect the powers expressly conferred" (former section 2481), and without resort to the

general law the provision bestowing these incidental powers would be devoid of intelligence. Statutes have been passed making it either necessary or possible that the surrogate should try claims against a decedent. None of them reproduced the rules of law respecting contracts and the methods of enforcing them or the defenses available against them.

Under section 2472a, a provision of great, though partial, usefulness, the court was given jurisdiction "to ascertain the title to any legacy or distributive share" (but without any codification of the rules relating to the assignment, pledge, or other disposition of causes of action), "to set off a debt against any legacy or distributive share" (but without any display of the processes by which the existence or nonexistence of debts must be adjudicated, or the complex questions upon which the doctrine of equitable set-off is based), "to affect the accounting. party with a constructive trust" (without any statutory treatise as to constructive trusts or the circumstances upon which such trusts may be erected), and "to exercise all other power, legal or equitable, necessary to the complete disposition of the matter" without any definition of either legal or equitable rules which the application of the section would involve.

By former sections 2707 to 2710 a duty was imposed upon the surrogate to determine diverse claims to personal property by enactments which seem to have indicated a hope that he would apply the laws with respect to replevin without statutory definition. For many years the Code has provided in bare language that in a probate proceeding, "if a party expressly puts in issue, before the surrogate, the validity, construction, or effect of any disposition of personal property, contained in the will, * * * the surrogate must determine the question." Former section 2624. This provision was ingrafted upon existing law, and took unto itself, as if embodied in its words, all that was known with regard to the questions to be disposed of in construction of testamentary instruments and the methods by which the practice was to be regulated and controlled.

No rational doubt was ever entertained but that the provision last cited, despite its mandatory form, gave to the surrogate only a "power and jurisdiction similar to that theretofore possessed by courts of equity." Cullen, C. J., Matter of Mount, 185 N. Y. 162, 167, 77 N. E. 999. The case last cited approves as clear and cogent the reasoning of Mr. Surrogate Rollins with respect to the scope of the statute providing for construction in probate proceedings. In the course of the opinion thus adopted. Judge Rollins says:

"I feel warranted by the authority of the cases collected by Sir Peter Maxwell in holding * *ᐟ * that an occasion does not arise for the exercise by the surrogate of the power conferred by section 2624 unless, in accordance with the course and practice of the Supreme Court, that tribunal would, under similar circumstances, exercise its jurisdiction." Jones v. Hamersley, 4 Dem. Sur. 427, 435.

The statute thus interpreted was amended and re-enacted, so as to extend the jurisdiction to testamentary dispositions of real as well as personal property, and again it was amended and re-enacted so as to

permit the surrogate to withhold his decision upon the terms of a will until after the decree in probate; but in respect to neither of these amendments was there any apparent apprehension either in the Legislature or in the reflections of those who promoted them that the statute gave to the surrogate general letters of marque to construe wills without ruth or discretion merely because they were brought within the range of his attention.

If under the statute which contemplated construction to be made in probate proceedings, it has been uniformly appreciated that the powers thereby bestowed were to be regulated by what was known and practiced in equity before the enactment, the present section 2615, both by its likeness to the earlier statute and by some graces which are clearly its own, must be regarded as a provision which embodies and depends upon existing rules of procedure. It was recognized in Matter of Mount, supra, that there was ground in the former section for a larger scope in this court than in the courts of equity; but there is no need to define or explore the jurisdiction which may have been bestowed by either former section 2624 or present section 2615 of the Code in excess of that inherent in other courts. It is enough that in its general, if not universal, application section 2615 is to be controlled and directed by recourse to all the rules which have grown up in courts of equity with respect to the action for construction, whether these extend and strengthen the jurisdiction or harness and restrain its employment.

These observations are properly provoked by the nature of the present application and the arguments of the petitioner that the proceeding should be carried to a decree according to her prayer, "even though she would not be entitled to relief in an action in the Supreme Court."

[2] The petitioner asserts a title in herself and others to lands which would be clear if the provisions of the will submitted in this proceeding were found to be invalid. The testator in that will died seised of the lands, leaving his widow, children of his own, and children of a deceased child. The premises were thereafter sold to Joseph Firmbach by conveyances of the wife and adult heirs at law of the testator, and by the further conveyance in behalf of the infant heirs through a guardian duly authorized thereto in a proceeding for the sale of such lands.

Joseph Firmbach then died intestate, leaving the petitioner and three others his only heirs at law. They have recently entered into a contract for the sale of the premises, but the title proffered by them is doubted by the vendee named in that contract, on the ground that it is threatened by the provisions of the will now proposed for construction. The prayer, therefore, is that in this proceeding the will be made to appear invalid so far as it might affect the disputed title. An action for the construction of this will based upon the facts stated supra would fail. Without the enabling effect of section 1866 of the Code, such action could not be maintained by any party concerned. If that section were invoked as the source of jurisdiction, it would fail, since neither the petitioner nor any of her associates in title is heir at law or devisee of the decedent whose will is in question, and the section only bestows the right of action upon the heir at law or devisee of the decedent whose will is offered for construction. Mellen v. Mei-

len, 139 N. Y. 210, 34 N. E. 925. With or without the aid of this section the action could not be maintained by heirs at law or devisees who had parted with their title. Horton v. Cantwell, 108 N. Y. 255, 15 N. E. 546.

[3] Moreover, the vendee, the only person who would be adversely affected by the finding asked for, is not a party to this proceeding. In any action appropriate to the facts disclosed, the vendee would be a necessary party. In such action the court would have resources for enforcing its judgment which are denied this court. The rule to which the Supreme Court would be subject, if that action presented the defect of parties here apparent, must also constrain this court. In no action or proceeding for any relief whatever is it legally desirable that a court indulge in a judgment hostile to the rights of a person over whom no jurisdiction has been secured.

It is asserted by the petitioner that, if the court could entertain this proceeding and declare its conclusion that the lands involved were not devised by the will, the title would be accepted and all the persons concerned would be pleased. This argument takes no thought of the possibility of a decision which might disappoint them. But in any event it is necessary, though unfortunate, that universal rules of procedure should prevail over arguments from inconvenience. The proceeding is dismissed.

Proceeding dismissed.